# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MILDRED SUSAN HILL, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No.: 2:23-cv-00902-RDP |
| WARREN AVERETT, LLC, et al., | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

This ERISA case concerns an employee welfare benefit plan. (*See generally* doc. 1). Plaintiffs Mildred Susan Hill and Bryan Hirsch have moved to unseal the undersigned's memorandum opinion and order (the "Order") from a previous action involving that plan, *Key v. Warren Averett, LLC, et al.*, Case No. 2:19-cv-01443-JHE ("*Key*"), doc. 94.[1] (Doc. 6). The court has referred that motion to the undersigned for a report and recommendation.[2] (Doc. 11). Defendants[3] have filed a response to the motion, along with a motion for leave to file documents

---

[1] Although all remaining defendants in this action were defendants in *Key* (discussed further below), neither of the plaintiffs in this action were plaintiffs in *Key*.

[2] Initially, this case was randomly assigned to the undersigned pursuant to this Court's January 2, 2015 General Order for Referral of Civil Matters to the United States Magistrate Judges of the Northern District of Alabama. (*See* doc. 2). The parties did not unanimously consent to magistrate judge jurisdiction, so the case was randomly reassigned to United States District Judge R. David Proctor, who currently presides over it. (*See* doc. 10).

[3] After the dismissal of several individual defendants (*see* docs. 3 & 4), the remaining named defendants in this action are: Warren Averett, LLC; Warren Averett Companies, LLC; Warren Averett Non-Qualified Retirement Plan for Certain Members and Non-Member Employees; and Warren Averett Non-Qualified Retirement Plan for Certain Members and Non-Member Employees Administrative Committee. (Doc. 1 at ¶¶ 3–6). These are the same Defendants in Key. For the purposes of this R&R, the distinctions between these Defendants are mostly irrelevant; thus, the undersigned will refer collectively to "Defendants," and will do so regardless of whether *Key* or this action is being discussed.

under seal. (Doc. 12). Plaintiffs have filed a reply in support of their motion. (Doc. 13). The parties have also filed supplemental briefs concerning the motion to unseal. (Docs. 27 & 29). For the reasons discussed below, the undersigned recommends that the court **DENY AS MOOT** the motion to seal and defer its ruling on the motion to unseal.

## I. Background

### A. Previous Action Involving the Plan

On August 30, 2019, James P. Key, Jr., filed the complaint in *Key*. *Key*, doc. 1. Key alleged various issues arising out of a retirement plan adopted by Defendants (the "Plan").[4] *Id.* After Defendants appeared, the parties in *Key* unanimously consented to magistrate judge jurisdiction, *id.*, doc. 10, and the undersigned presided over the case through its conclusion.

Much of the docket in *Key* was originally filed under seal pursuant to stipulated protective orders entered by the undersigned on January 15, 2020 and December 30, 2020. *Id.*, docs. 36 & 65. This included Defendants' motion for partial summary judgment, *id.* at doc. 51, Key's unredacted motion for partial summary judgment, *id.*, doc. 57-1, and the briefing on those motions. At the unopposed requests of the parties, *id.*, docs. 73 & 91, the undersigned unsealed a great deal—but not all—of that material. *Id.*, docs. 87 & 93.

Ultimately, the undersigned entered the Order, granting Key's motion for summary judgment and denying Defendants' motion for summary judgment. *Id.*, doc. 94. As contemplated by the scheduling order, the only issue addressed in those motions was whether the Plan was a

---

[4] Key's original complaint is heavily redacted. *Key*, doc. 1. With the undersigned's permission, *id.*, docs. 2 & 3, Key also filed an unredacted copy under seal. *Id.*, doc. 5. Key later amended his complaint. *Id.*, doc. 21. That complaint is currently under seal, but the gist of the allegations is the same as those in the original complaint.

"top hat plan" under ERISA. *See id.*, doc. 39 at 1. The undersigned concluded that it was not. *See id.*, doc. 94.

Following the entry of the Order, on November 2, 2021, the parties submitted a second report pursuant to Federal Rule of Civil Procedure 26. *Id.*, doc. 97. Their report indicated that they intended to pursue mediation within the next 90 days and that Key did "not oppose Defendants' request to have a deadline of 7 days after the above-referenced mediation (if unsuccessful) to file a Motion to Amend the Court's September 30, 2021 Order (Doc. 94) to certify the Order for appeal under 28 U.S.C. § 1292(b) or to file a Motion for Reconsideration of the Order." *Id.*, doc. 97 at 1. Defendants requested and received additional extensions of this deadline until January 24, 2022. *Id.*, docs. 99, 100, 101, 102, 103 & 104. Ultimately, without any further substantive action by the undersigned, the parties stipulated to the dismissal with prejudice of *Key* on February 1, 2022. *Id.*, doc. 106.

### B. Current Action

On July 11, 2023, Plaintiffs filed this action. (Doc. 1). Like Key, Plaintiffs challenge aspects of the Plan. (*See id.*). On September 8, 2023, Plaintiffs moved to unseal the Order.[5] (Doc. 6). As discussed above, that motion is fully briefed and ripe for review.

Defendants also filed a motion to seal. (Doc. 12). To determine whether this could be resolved without court involvement, the undersigned directed that the parties "confer as to which documents should be filed under seal and which redactions are appropriate," setting out "with specificity: (1) any areas of disagreement and (2) for each area of disagreement, each party's

---

[5] Although Plaintiffs indicated that the "same motion is being filed simultaneously in the *Key* matter" (doc. 6 at 1), no such motion has actually been filed.

position and proposed resolution." (Doc. 18). According to the parties' status report, their "sole area of disagreement involves Plaintiffs' Motion to Unseal Judge England's dispositive ruling (Doc. 6) in the *Key* litigation." (Doc. 23 at 1).

## II. Analysis

The court has indicated that the undersigned should address both Plaintiffs' motion to unseal (doc. 6) and Defendants' motion to seal (doc. 12) in this report and recommendation. As discussed above, the parties appear to have resolved the issues unrelated to the motion to unseal. Therefore, the undersigned recommends that the motion to seal be **DENIED AS MOOT**. The remainder of this report and recommendation concerns only the motion to unseal.

"The common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (citation omitted). To that end, the norm is that the public has access to judicial records and is entitled to "inspect and copy" them. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). However, the right of access is not absolute:

> The common law right of access may be overcome by a showing of good cause, which requires "balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential." *Chicago Tribune,* 263 F.3d at 1309. "[W]hether good cause exists . . . is . . . decided by the nature and character of the information in question." *Id.* at 1315. In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents. *See In re Alexander Grant & Co. Litig.,* 820 F.2d 352, 356 (11th Cir.1987); *Shingara v. Skiles,* 420 F.3d 301, 305–06 (3d Cir.2005); *Amodeo,* 71 F.3d at 1050–51. A party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the

information. *See Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978); Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts,* 105 Harv. L. Rev. 427, 464–74 (1991).

*Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007). In other words, the burden is on the party seeking to seal materials to show that there is good cause to do so.[6] *See id.*

Defendants recharacterize Plaintiffs' motion as seeking modification of the protective order in *Key* rather than unsealing the Order. While these are related inquiries, the upshot of Defendants' recharacterization is that it would flip the burden from themselves (if the focus is on unsealing pursuant to the right of access) to Plaintiffs (if the focus is on modifying the protective order). *See Pettaway v. Barber*, 645 F. Supp. 3d 1269, 1276 (M.D. Ala. 2022) (noting that the party seeking modification of a protective order to unseal materials submitted pursuant to it has the burden to show good cause for that modification). This focus is misplaced for several reasons. First, and most importantly, Plaintiffs are not asking to unseal any material subject to the protective order. (*See, e.g.,* doc. 29 at 4) ("Plaintiffs do not seek to unseal any of the exhibits attached to the *Key* parties' dispositive briefing or **anything** besides the *Key* dispositive order.") (emphasis in original). The Order is not subject to the protective order. *See Key*, doc. 65. The parties did not attempt to—and in any case cannot—bind the court to maintain orders under seal through their stipulation, so the protective order is irrelevant to the question of whether to unseal the Order. Second, even if the protective order did apply to the Order, it specifically contemplates that

---

[6] One wrinkle here is that Plaintiffs are seeking to unseal a sealed document. "A party seeking to seal documents must generally first show good cause . . . After this initial showing, the party seeking unsealing bears the burden of showing that good cause no longer exists." *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1364 n.2 (11th Cir. 2021) (citations omitted). In cases like this where the court never required an initial showing of good cause to seal a document, the burden to show good cause appears to remain on the party seeking to maintain the document under seal. *See id.*

redacted versions of sealed documents will appear on CM/ECF, rather than entirely sealing documents with no public presence on the record visible to the public (as the Order currently exists). *See id*. at 7. Finally, although the parties could not have known this, the undersigned entered the Order under seal solely because it referenced material filed under seal. The undersigned should be clear that it was *never* his intention that the Order remain sealed, pursuant to the protective order or otherwise. Had the case proceeded further rather than settle, the undersigned would have required Defendants to show cause why the Order should remain under seal. All of that is to say that the undersigned considers Defendants' arguments in the context of unsealing the Order rather than modifying the protective order, with the burden on Defendants to show that the Order should continue to be sealed.

Defendants raise two overarching objections to the motion to unseal, one procedural and one substantive. Procedurally, they contend that the motion should have been filed in the original action. (Doc. 27 at 1). Substantively, they argue that the motion should be denied on its merits. (*Id.* at 3–13). The undersigned addresses each argument separately below.

### A. Procedural Objection

Defendants' procedural opposition to the motion is that there is no authority supporting a motion to unseal filed outside of the action containing the sealed document. (Doc. 27 at 1). Instead of filing a motion in this action, Defendants argue Plaintiffs should move to intervene in *Key* and address the issue of unsealing the Order within the context of that case. (*Id.*). Plaintiffs reply that this would be a waste of time and resources given that the issue has been fully briefed in this case. (Doc. 29 at 20).

Defendants are correct that it would be procedurally odd for the court to enter an order in this action unsealing the Order. To that end, the undersigned agrees that it would have been more

6

advisable to move to intervene in *Key* and hash the issue out there.  However, Plaintiffs are correct that there is nothing stopping the undersigned from unsealing the Order based on the briefing in this case.  The entities advocating for the Order to remain under seal are identical in both cases.  While it is unusual for the briefing concerning unsealing material to appear in the record in a separate case, there is no question that both parties have had the opportunity to argue the issue on the record here.[7]  Additionally, there does not appear to be anything stopping the court in this case from allowing the parties to file the Order publicly on the record.[8]

With that in mind, and based on the analysis below, the undersigned recommends that the court defer the issue of the motion to unseal.  Procedurally, this would mean that the undersigned would enter an order unsealing the Order for the reasons discussed below, after which the issue (and any procedural irregularities) in this case would be moot.

### B. Substantive Objections

The analysis below also reflects how the undersigned would decide the motion had it been filed in *Key*.  If the court determines that Plaintiffs' motion is procedurally appropriate and is inclined to grant relief in this action, it is also the undersigned's recommendation for what relief is due.

---

[7] Defendants specifically note in their supplemental response that their substantive arguments are made "to flesh out the future issues" if Plaintiffs moved to intervene in *Key.* (Doc. 27 at 3).

[8] Defendants contend that the parties' agreement in this case resolves the issue of "filing the *Key* Order under seal in this action" (doc. 27 at 2), but this does not limit the *court's* power to require the Order to be filed on the record.  *Cf. OJ Commerce, LLC v. KidKraft, Inc.*, 34 F.4th 1232, 1240 (11th Cir. 2022) (declining to redact opinion even though it "discusses record evidence that the parties, with our permission, filed under seal").

Plaintiffs contend the Order should be unsealed for six reasons. First, they state that "Defendants have already released the order into the wild by giving unredacted copies . . . to persons that are not subject to the *Key* protective order." (Doc. 6 at 3–4). Second, they contend the Order "will play a very important role in this action" due to its conclusion that the Plan is not a top hat plan. (*Id.* at 4). Third, they argue that judicial economy will be served by unsealing the Order because it will eliminate the need for "another byzantine docket" containing "numerous versions of the same filings . . . located throughout." (*Id.* at 4–5). Fourth, Plaintiffs invoke the public right of access to court filings (discussed above). (*Id.* at 5–6). Fifth, they point to the relative lack of case law concerning ERISA's top hat exception. (*Id.* at 7). Finally, Plaintiffs state that no privacy concerns exist preventing the Order from being unsealed and no harm would result from unsealing it. (*Id.* at 7–8). Defendants' supplemental response addresses some of these arguments, albeit (as discussed above) in the context of modifying the *Key* protective order.[9] (*See* doc. 27).

The undersigned first examines how the parties' arguments fit into the *Romero* factors—again, "whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public

---

[9] In their initial response, Defendants did not directly address any of Plaintiffs' arguments. Instead, they contend that the issues raised by the motion to unseal "should be considered with other confidentiality and privacy issues for this action and the parties should confer and be able to agree or at least reduce the number of privacy and confidentiality issues." (Doc. 12 at 2). To that end, Defendants stated their intention to file a motion for summary judgment and serve the brief in support on Plaintiffs, but not file the brief until the court resolves what should be under seal or redacted. (*Id.*). The court has now administratively terminated Defendants' motion for summary judgment as premature. (*See* doc. 20).

officials or public concerns, and the availability of a less onerous alternative to sealing the documents"—placing any of the parties' arguments in the context of the relevant factor. Then considers any other factors bearing on the sealing analysis.

### 1. Impairment of Court Functions

Defendants contend that "[n]ot modifying the *Key* Protective Order . . . would not impair Court functions." (Doc. 27 at 4). As Plaintiffs point out (doc. 29 at 5–6), this flips the inquiry on its head. The question is whether unsealing the Order would impair court functions, not whether maintaining the status quo would do so. Defendants offer no convincing argument that unsealing the Order would have any effect at all on court functions, and the undersigned can conceive of none.

As noted above, Plaintiffs also argue that judicial economy would be served by unsealing the Order. This relates at least somewhat to the impairment of court functions factor. Plaintiffs argue that unsealing the Order would eliminate in this action one problem that plagued *Key*: a "byzantine docket" full of "numerous versions of the same filings." (Doc. 6 at 4–5). It is not at all clear that unsealing the Order would entirely solve this problem given that this case will likely have its own variety of confidential information that one or both parties may seek to seal, but unsealing the Order would eliminate one source of potential conflict. On the whole, the undersigned concludes this factor supports unsealing.

### 2. Legitimate Privacy Interests

Defendants contend that they have legitimate privacy interests in "trade secrets," "confidential financial information," and "competitive compensation structures," including the "types, numbers, and average salaries of employees, and the structure of the ERISA plan at issue (i.e., 'competitive compensation structures')," which they say are "pull[ed] together" in the Order.

(Doc. 27 at 5). Defendants contend, without any support, that "in industries other than accounting, average salaries and numbers and types of employees might not be a privacy interest, Defendants have gone to considerable trouble to protect such information." (*Id.*).

Although Defendants may have some interest in the confidentiality of their compensation information, it is insufficient to overcome the right of access. While Defendants speak in generalities about how the Order synthesizes their compensation information, they do not identify how they would be harmed if this were made public. Apart from their conclusory statement, Defendants have not substantiated that there is anything industry-specific about accounting that would make employee compensation numbers more private than in other industries in which they acknowledge those numbers would *not* present a compelling privacy interest. Instead, they offer only claims of general harm. This is not sufficient to support sealing. *See Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) ("[A] naked conclusory statement that publication of the [sealed document] will injure the [party] in the industry and local community falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal."). The undersigned does not see any obvious reason why accounting would be different than any other competitive industry. Even if the accounting field did present a unique concern, Defendants do not explain why five-year-old compensation numbers (which the undersigned notes are a small portion of the analysis) would shed light on Warren Averett's current salaries such that Defendants would be competitively harmed by their disclosure.[10]  *See OJ Commerce*, 34 F.4th at 1241 ("[I]t

---

[10] Plaintiffs point out that information regarding Defendants' average compensation is currently available on the web via third-party sites such as Glassdoor. (Doc. 29 at 6). It is not clear how Glassdoor derives its information, so the undersigned does not consider this fact particularly relevant to the analysis given that the compensation figures in the Order were sourced directly from Defendants.

is unclear how the publication today of a six-year-old tidbit about the parties' now-terminated relationship could harm a legitimate interest.").

The undersigned also notes that litigation concerning top hat plans routinely refers to employee salaries—including litigation involving accounting firms. *See Simpson v. Ernst & Young*, 879 F. Supp. 802, 812 (S.D. Ohio 1994). As Plaintiffs point out (doc. 29 at 7), this makes sense; the statutory language concerning top hat plans specifically references compensation. In light of this, it makes little sense to impose what would effectively be a bright-line rule that opinions concerning top hat plans at accounting firms should presumptively be under seal solely because they contain competitive salary information. This factor does not support maintaining the Order under seal.

### 3. Likelihood of Injury

Defendants contend that unsealing the Order would lead to a high likelihood of injury, weighing this factor heavily in favor of maintaining it under seal. (Doc. 27 at 6). Here, Defendants speculate that "Defendants' competitors could use the financial and other information in the *Key* Order in recruiting pitches." (*Id.*). But this supports only a *possible* injury, not a *likely* injury. Furthermore, as to the injury itself, Defendants' argument essentially builds on the notion, rejected above, that Defendants have a compelling privacy interest in their employee compensation numbers. That argument is just as unpersuasive here. This factor also does not support the continued sealing of the Order.

### 4. Reliability of the Information

Defendants contend that the high reliability of the compensation information under seal militates in favor of keeping it under seal. (Doc. 27 at 6–7). However, they also argue that the

11

Order is *unreliable* because they expect a different result in this case based on the different arguments they intend to make. (*Id.*).

Neither of Defendants' arguments holds water. As to the first argument, to the extent that this factor is even relevant in this case, Plaintiffs are correct that the case the Eleventh Circuit cited in *Romero* for its relevance cautioned that "[r]aw, unverified information should not be as readily disclosed as matters that are verified." *U.S. v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995). In other words, if the information under seal is not unreliable, this factor does not weigh in favor of sealing. Since Defendants concede that their compensation information is reliable, they cannot rely on this factor.

As to the second argument, it is difficult to see how the analysis in the Order is unreliable or unverified. To the extent Defendants contend the analysis is unpersuasive—or even flat out wrong—in light of the new arguments they intend to make, this is not a public access issue. Nor is it plausible that the court in this case, which will undoubtedly see the Order in its unredacted form, would have its analysis prejudiced if the public is also allowed to see it. There is nothing to support that this factor weighs against unsealing.

**5. Opportunity to Respond**

Defendants contend that they would not have an opportunity to respond if the Order were unsealed because, once unsealed, "Defendants would not know how or when competitors were using the information." (Doc. 27 at 7). But this factor concerns whether "there is a fair opportunity for the subject to respond to any accusations contained therein." *Amodeo*, 71 F.3d at 1051. On those terms, it is unclear that the factor applies at all here. Even on Defendants' terms—i.e., piggybacking on their theory of harm to their legitimate privacy interests—since unsealing the Order implicates no legitimate privacy interest, this factor does not support sealing either.

12

**6. Information Concerning Public Officials or Public Concerns**

Defendants contend this factor does not appear to apply here. (Doc. 27 at 7). However, relying on the notion that Plaintiffs bear the burden to show good cause to modify the protective order, they weigh this in favor of keeping the status quo. (*Id.*). As discussed above, the burden is on Defendants, so even if this factor were neutral it would not support the status quo.

As for substantive arguments concerning this factor, Plaintiffs' argument concerning the relative lack of case law on the top hat exception (doc. 6 at 7) appears to bear on it. Having researched the exception extensively in crafting the Order, the undersigned agrees that the development of case law concerning the top hat exemption weighs in favor of unsealing.[11] As Plaintiffs point out (doc. 29 at 11), the Order appears to be the only decision in the Eleventh Circuit concerning a top hat plan. Regardless of whether the undersigned was right or wrong on the merits, other courts and litigants have an interest in the existence of the Order and the analysis in it.[12]

**7. Alternatives to Unsealing**

Defendants' proposed alternative to unsealing is that Plaintiffs move to intervene in *Key* to modify the protective order, after which the parties would be allowed to use the Order in this action (presumably under seal). (Doc. 27 at 8–9). However, this (1) does not address the public right of access to the Order and (2) mistakenly focuses on the protective order, which is not the basis for

---

[11] Defendants contend any argument that there is a public interest in the Order implies that the undersigned erred by entering it under seal. (Doc. 27 at 7–8). This is incorrect; as discussed above, the undersigned entered the Order under seal as a stopgap, not because the undersigned concluded there was no public interest in it.

[12] Plaintiffs also argue that Defendants' internal reliance on the top hat plan postdating the Order presents a public concern. (Doc. 6 at 7; doc. 29 at 15–16). This argument is entangled with the merits of *Hill*, so the undersigned does not consider it persuasive in determining whether to unseal the Order.

13

the Order remaining under seal. Defendants' proposal is not well suited to the actual issues at play.

The undersigned has also considered the possibility of redacting information in the Order, which Plaintiffs say they proposed as a compromise to avoid a dispute with Defendants (doc. 29 at 13–14). However, as discussed above, Defendants have not pointed to any cognizable injury that would result from unsealing the Order in full. Again, the undersigned emphasizes that the compensation figures in the Order are of questionable utility to Defendants' competitors given their age. The undersigned also concludes that the availability of the full Order would ultimately be more helpful to courts faced with analyzing purported top hat plans. Therefore, the undersigned concludes redaction would not be a reasonable alternative to unsealing.

### 8. Other Factors

#### a. Reliance on Settlement Agreement

Defendants contend that "a primary consideration" for maintaining the Order under seal is their reliance on the protective order in *Key*. (Doc. 27 at 9). They note that "keeping the *Key* Order under seal was an express and necessary part of the settlement." (*Id.*). To support this, they include a provision from the settlement agreement providing:

> PLAINTIFF agrees that neither he nor anyone on his behalf will ever seek to unseal or otherwise make public the Court's order entered on September 30, 2021 denying WARREN AVERETT's motion for partial summary judgment and granting PLAINTIFF's motion for partial summary judgment, Doc. 94 (the "Order"). PLAINTIFF further agrees that he will not discuss the Order with or disclose the Order to anyone, other than his spouse and/or his counsel, accountant, or other representative as necessary for performance of their job, as long as such third party acknowledges and agrees to keep the Order and its contents confidential.

(*Id.* at 10).

The first problem for Defendants' argument is that, as discussed above, the Order is not governed by any protective order. Whether the settlement agreement contemplates that the agreement will remain under seal is beside the point given the presumption of public access. As the Eleventh Circuit has stated

> It is immaterial whether the sealing of the record is an integral part of a negotiated settlement between the parties, even if the settlement comes with the court's active encouragement. Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case. Absent a showing of extraordinary circumstances set forth by the district court in the record consistent with *Wilson,* the court file must remain accessible to the public.

*Brown v. Advantage Engr., Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992).

Defendants' reliance on *F.D.I.C. v. Ernst & Ernst*, 677 F.2d 230 (2d Cir. 1982), which they contend supports the relevance of the settlement agreement (doc. 27 at 9–10), is also misplaced. In *Ernst & Ernst*, the district court entered an order confirming the confidentiality of the parties' settlement. 677 F.2d at 231. In doing so, the district court determined that "secrecy was in the best interests not only of the parties involved but also the public." *Id.* Here, no such determination has ever been made. In fact, until Defendants raised the issue, the undersigned was entirely unaware that the parties' settlement contemplated that the Order would remain under seal. The undersigned did not supervise the parties' settlement or approve of the agreement. In fact, the undersigned entered no substantive (i.e., non-scheduling-related) orders between the entry of the Order and the parties' stipulation of dismissal (doc. 106), which closed the case and ended the court's jurisdiction over it.

Based on *Brown*, and considering the undersigned's lack of involvement in the settlement of this case, the undersigned concludes Defendants' reliance on the settlement agreement is irrelevant to the question of whether the Order should remain sealed.[13]

### b. "Release" of the Order "Into the Wild"

Plaintiffs contend that the Order has already been "released . . . out into the wild" because Defendants have provided it to "persons that are not subject to the *Key* protective order." (Doc. 6 at 3–4). Specifically, this appears to mean that because Defendants provided the unredacted Order to *Plaintiffs themselves*, which Plaintiffs acknowledge was required by ERISA claims regulations (*id.* at 3), Defendants have forfeited any claim that the Order should continue to remain under seal. Both parties spill a great deal of ink on this issue. (Doc. 27 at 11–15; doc. 29 at 16–19). To short-circuit this lengthy dispute, it would be perverse and inequitable to weigh Defendants' obligation to comply with ERISA regulations as some sort of waiver of the protective order under these circumstances. The undersigned thus accords this argument no weight in the analysis.

### c. Importance of the Order in *Hill*

Plaintiffs contend that the Order's relevance to *Hill* supports unsealing. (Doc. 6 at 4). While the Order may be relevant in this case, it is not necessary to unseal the Order for the court to consider it. The undersigned also finds this factor is irrelevant to unsealing.

### 9. Synthesis of the Factors

As discussed above, many of the factors the undersigned has considered weigh in favor of unsealing or are neutral in the analysis. None of them support keeping the Order under seal.

---

[13] The parties dispute aspects of the settlement negotiation process. (Doc. 27 at 9-10; doc. 29 at 25). Since the parties' expectations are irrelevant to the analysis above, there is no need to delve further into this dispute.

Because it is Defendants' burden to show good cause to do so, the undersigned concludes that the Order should be unsealed.

### III. Conclusion

For the reasons discussed above, the undersigned **RECOMMENDS** that the motion to seal (doc. 12) be **DENIED AS MOOT**. The undersigned also recommends that the court defer its ruling on the motion to unseal (doc. 6). If the court does so, the undersigned will enter an order unsealing the Order. If the court declines to do so, the undersigned **RECOMMENDS** that the motion to unseal be **GRANTED**.

### IV. Notice of Right to Object

Either party may file specific written objections to this report and recommendation within fourteen (14) days. Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3–1. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon opposing counsel.

DONE this 21st day of February, 2024.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE